## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>IMH FINANCIAL CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 20-11858-CSS<br><br>**Related Docket No. 158** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

IMH Financial Corporation ("IMH", and after the Effective Date,[1] the "Reorganized Debtor"), as plan proponent and debtor and debtor-in-possession, having filed on September 2, 2020 [Docket No. 158] the Debtor's *Amended Chapter 11 Plan of IMH Financial Corporation* (as may be amended, modified or supplemented from time to time, the "Plan"), and the Bankruptcy Court having entered after due notice and hearing held on September 1, 2020, pursuant to sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code, Rules 2002, 3016, 3017, 3018, 3020, 9013, and 9021 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2002-1, 3017-1 and 9013-1, its *Order Granting Motion of IMH Financial Corporation for Entry of an Order: (I) Approving the Disclosure Statement; (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan of Reorganization; (III) Approving Forms of Notices and Ballots; (IV) Establishing Notice and Objection Procedures in Respect Thereof; (V) Setting Confirmation Hearing and Related Deadlines; and (VI) Granting Related Relief* [Docket No. 161] (the "Solicitation Procedures Order"), by which the Bankruptcy Court, among other things, (i) approved the *Amended*

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan (as defined below).

*Disclosure Statement Dated September 2, 2020 for Chapter 11 Plan of IMH Financial Corporation*, [Docket No. 159] (as may be amended, modified or supplemented from time to time, the "Disclosure Statement"), (ii) fixed the voting record date; (iii) established solicitation and voting procedures for the solicitation and tabulation of votes to accept or reject the Plan, (iv) approved the forms of solicitation package and ballots to be used in connection therewith, and (v) scheduled a hearing on October 13, 2020 at 12:00 p.m. (prevailing Eastern Time) to consider confirmation of the Plan (the "Confirmation Hearing"); and an affidavit of service having been executed by Donlin, Recano & Company, Inc. ("DRC"), in its capacity as the Debtor's voting and solicitation agent, attesting to the mailing of the notice of the Confirmation Hearing and solicitation materials in respect of the Plan in accordance with the Solicitation Procedures Order and filed with the Bankruptcy Court on September 3, 2020 [Docket No. 163]; and due notice of the Confirmation Hearing having been provided to Holders of Claims against and Interests in the Debtor and to other parties in interest, all in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order; and the Debtor having filed the *Plan Supplement to the Amended Chapter 11 Plan of IMH Financial Corporation* ("Initial Plan Supplement") [Docket No. 194] and the *First Amended Plan Supplement to the Amended Chapter 11 Plan of IMH Financial Corporation* [Docket No. 206] (the "Amended Plan Supplement" and collectively with the Initial Plan Supplement, the "Plan Supplement"); and the *Declaration of John Burlacu on behalf of Donlin Recano & Company, Inc., Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Amended Chapter 11 Plan of IMF Financial Corporation* [Docket No. 198] (the "Voting Certification"), certifying the voting tabulation compiled by DRC and reflecting that the requisite votes were obtained to support confirmation of the Plan; the Debtor having filed the *Declaration of Chadwick S. Parson,*

*Chairman and Chief Executive Officer, in Support of Debtor's Memorandum of Law in Support of Confirmation of Debtor's Amended Chapter 11 Plan of Reorganization* [Docket No. 205] (the "Parson Declaration"), *Declaration of Samuel J. Montes, Chief Financial Officer, in Support of Confirmation of Debtor's Amended Chapter 11 Plan of Reorganization* [Docket No. 199] (the "Montes Declaration"), *Declaration of James L. Doak of Miller Buckfire & Co. in Support of Confirmation of Debtor's Amended Chapter 11 Plan of Reorganization* [Docket No. 201] (the "Doak Declaration"), *Declaration of Dr. Scott Hakala of ValueScope Inc. in Support of Confirmation of Debtor's Amended Chapter 11 Plan of Reorganization* [Docket No. 200] (the "Hakala Declaration"), *Debtor's Memorandum of Law in Support of Confirmation of Debtor's Amended Chapter 11 Plan of Reorganization* [Docket No. 203] (the "Memorandum"); and the Confirmation Hearing having been held on October 13, 2020; and upon the exhibits which were admitted into evidence and the testimony of all witnesses received at the Confirmation Hearing and considered by the Court (including, without limitation, the Voting Certification, Parson Declaration, Doak Declaration, Montes Declaration, and Hakala Declaration); and upon the arguments of counsel and the full record in the Chapter 11 Case; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A.    Findings of Fact and Conclusions of Law.

1.    The findings of fact and conclusions set forth in the Confirmation Order and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and

conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any findings of fact constitute conclusions of law, or any conclusions of law constitute findings of fact, they are adopted as such.

**B.**     **Jurisdiction, Venue and Core Proceeding.**

2.      On July 23, 2020 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Bankruptcy Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012.  Venue in this District was proper as of the Petition Date and remains proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has jurisdiction (a) to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and (b) to enter an order, consistent with Article III of the United States Constitution, with respect thereto.

**C.**     **Eligibility for Relief.**

3.      The Debtor was and is an Entity eligible for relief under section 109 of the Bankruptcy Code.

**D.**     **Commencement of the Chapter 11 Case.**

4.      On the Petition Date, the Debtor commenced a case under chapter 11 of the Bankruptcy Code.  The Debtor has operated its business and managed its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in the Chapter 11 Case.

E.      **Judicial Notice.**

5.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Case, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Case. Any resolutions of objections to Confirmation made on the record at the Confirmation Hearing are hereby incorporated by reference. Any and all unresolved objections, statements, and reservations of rights are overruled on the merits.

F.      **Burden of Proof.**

6.      The Debtor has met its burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

G.      **Solicitation Procedures Order.**

7.      On September 2, 2020, the Bankruptcy Court entered the Solicitation Procedures Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) fixed July 23, 2020 as the Voting Record Date (as defined in the Solicitation Procedures Order); (c) fixed October 6, 2020 at 5:00 p.m. (prevailing Eastern Time) as the Voting Deadline for voting to accept or reject the Plan, subject to extensions thereof in accordance with the Solicitation Procedures Order; (d) fixed October 6, 2020 at 4:00 p.m. (prevailing Eastern Time) as the deadline for objecting to confirmation of the Plan; (e) set October 13, 2020 at 12:00 p.m. (prevailing Eastern Time) as the date and time for commencement of the Confirmation Hearing, as may have been adjourned from time to time; and (f) approved the form of the Confirmation Hearing Notice and method of notice of the

Confirmation Hearing.

**H.      Transmittal and Mailing Materials; Notice.**

8.      As evidenced by the DRC Affidavits [Docket Nos: 170, 172 and 174], due, adequate, and sufficient notice of the Disclosure Statement, Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, was published in the The New York Times and the Arizona Republic and has been given to:  (a) all known Holders of Claims and Interests; (b) all parties that requested notice in accordance with Bankruptcy Rule 2002; (c) all counterparties to unexpired leases and executory contracts with the Debtor; and (d) all taxing authorities listed on the Debtor's Schedules or claims register, in substantial compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002(b), 3017, and 3020(b), and no other or further notice is or shall be required.  Adequate and sufficient notice of the Confirmation Hearing, as continued from time to time, and other deadlines and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is or shall be required.

**I.      Good Faith Solicitation.**

9.      Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws, and regulations.  Specifically, the solicitation materials approved by the Bankruptcy Court in the Solicitation Procedures Order (including the Disclosure Statement, Plan, and Ballots) were transmitted to and served on all Holders of Interests in Classes that were entitled to vote to accept or reject the Plan in compliance with section 1125 of the Bankruptcy Code, the Solicitation Procedures Order, and

the Bankruptcy Rules.  Such transmittal and service were adequate and sufficient, and no further

notice is or shall be required.  In addition, Holders of Claims or Interests in Classes that were not

entitled to vote to accept or reject the Plan, and other parties in interest, were provided with

certain non-voting materials approved by the Bankruptcy Court in compliance with the

Solicitation Procedures Order  All procedures used to distribute solicitation materials to Holders

of Claims and Interests were fair and conducted in accordance with the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, the Solicitation Procedures Order and all other

applicable rules, laws and regulations.

**J.** **Voting Certification.**

10. Prior to the Confirmation Hearing, the Debtor filed the Voting Certification.  All

procedures used to tabulate the Ballots were fair and conducted in accordance with the

Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and

all other applicable laws, rules and regulations.

11. The Holders of Claims in Classes 1, 2, and 3 are unimpaired and deemed to have

accepted the Plan and, therefore, were not entitled to vote to accept or reject the Plan.  The

Holders of Interests in Classes 4, 5, 6, 7, and 8 are impaired under the Plan, were entitled to vote

on the Plan and, as set forth in the Voting Certification, voted to accept the Plan.

**K.** **Plan Supplement**.

12. On September 29, 2020, in accordance with the Solicitation Procedures Order, the

Debtor filed the Initial Plan Supplement.  Attached to the Initial Plan Supplement were: (i) the

Assumed Contracts Schedule; (ii) Exit Facility Documents; (iii) New Organizational Documents;

(iv) New Executive Employment Agreements; (v) Amended and Restated JIA Agreement; (vi)

Identities of the proposed members of the Reorganized Debtor's board and the proposed

executive officers of the Reorganized Debtor; and (vii) List of Causes of Action retained by the Reorganized Debtor.   On October 7, 2020, the Debtor filed the Amended Plan Supplement. Attached to the Amended Plan Supplement were: (i) the Amended Assumed Contracts Schedule; and (ii) Redline of Amended Assume Contracts Schedule to Assume Contracts Schedule (Attachment 1 to the Initial Plan Supplement).

13.     The Amended and Restated JIA Agreement is effective as of the Effective Date of the Plan and binding on the parties thereto as of the Effective Date of the Plan.

14.     Upon the occurrence of the Effective Date, the Seventh Amendment to the Scottsdale Seville Lease Agreement (Office) and amendment to the Sublease Agreement with Juniper Investment Advisors, LLC and all prior amendments shall be legal, valid and binding upon the Reorganized Debtor and all non-debtor parties thereto.

**L.    Modification of the Plan**.

15.     Subsequent to solicitation, except as provided in this Order, the Debtor made no modifications to the  Plan.  Pursuant to this Order, the Debtor makes the following non-material modification to the Plan:

Article II(D) of the Plan is deleted in its entirety.

16.     The foregoing modification is consistent with all of the provisions of the Bankruptcy Code, including without limitation sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code.  The aforementioned modification does not adversely affect the treatment of any Holder of a Claim or Interest under the Plan, except for Juniper and Juniper has expressly consented to the foregoing modification.   Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, the modification does not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under 1126 of the Bankruptcy Code.  Prior notice

regarding the substance of any modifications to the Plan, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing constitute due and sufficient notice of any and all of such modifications.

**M.    Bankruptcy Rule 3019.**

17.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Interests who voted to accept the Plan, and the Holders of Claims who are conclusively presumed to have accepted the Plan, are deemed to have accepted the Plan as modified by the Plan modifications.  No Holder of an Interest shall be permitted to change its vote as a consequence of the Plan modifications, unless otherwise agreed to by the Holder of the Interest and the Debtor.  The modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Plan, as modified, shall constitute the Plan submitted for Confirmation and confirmed pursuant to the Confirmation Order.

**N.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

18.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows.

### (i)    Section 1129(a)(1)—Compliance with Applicable Provisions of the Bankruptcy Code.

19.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

### (ii)    Section 1122(a) and 1123(a)(1)—Proper Classification.

20.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eight

Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Fee Claims and DIP Claims, which are addressed in Article II of the Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

21.    As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### (iii)    Section 1123(a)(2)—Specification of Unimpaired Classes.

22.    Article III of the Plan specifies that Claims in Class 1, Class 2, and Class 3 are Unimpaired under the Plan.  As a result thereof, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (iv)    Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

23.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 4, 5, 6, 7, and 8.  As a result thereof, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (v)    Section 1123(a)(4)—No Discrimination.

24.    Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides for the same treatment of each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment

with respect to such Claim or Interest.  As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### (vi)    Section 1123(a)(5)—Implementation/Additional Plan Provisions.

25.    Pursuant to section 1123(a)(5) of the Bankruptcy Code, Articles IV-VII and other provisions of the Plan specifically provide in detail adequate and proper means for the Plan's implementation, including provisions governing the: (a) means of funding Plan obligations; (b) appointment of post-Effective Date Officers and Members of the Board of Directors for the Reorganized Debtors, and the Distribution Agent under the Plan; (c) continued corporate existence and vesting of assets; (d) cancellation of notes, instruments, certificates, and other documents; (e) cure of defaults for assumed executory contracts and unexpired leases; (f) assumption of insurance policies; (g) procedures for objections to Claims and Interests; (h) procedures for resolving Disputed Claims and Interests; and (i) procedures for distributions on account of Allowed Claims and Interests.  Moreover, the Reorganized Debtor will have, immediately upon the Effective Date, sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.  As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

### (vii)    Section 1123(a)(6)—Voting Power of Equity Securities.

26.    Pursuant to, and to the extent required by, section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor's charter shall be amended to include a provision prohibiting the issuance of non-voting equity securities; accordingly, section 1123(a)(6) of the Bankruptcy Code is satisfied.

### (viii)    Section 1123(a)(7)—Selection of Officers and Directors.

27.    Article IV(K) of the Plan sets forth that the existing officers of the Debtor shall

continue to serve in their current capacities for the Reorganized Debtor, and the Plan Supplement identified the post-Effective Date members of the Reorganized Debtor's Board of Directors. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

### (ix)    Sections 1123(a)(8), 1123(c)—Debtor is Not an Individual

28.    The Debtor is not an individual.  Accordingly, sections 1123(a)(8) and 1123(c) of the Bankruptcy Code are not applicable.

### (x)    Section 1123(b)—Discretionary Contents of Plan.

29.    The Plan contains various provisions that may be construed as discretionary, but are not required for the Plan to be confirmed under the Bankruptcy Code.  As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of the Bankruptcy Code is satisfied.

### (xi)    Section 1123(b)(1)—Claims.

30.    Pursuant to section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests.

### (xii)    Section 1123(b)(2)—Executory Contracts and Unexpired Leases.

31.    Pursuant to section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides for the assumption, assumption and assignment, or rejection of the executory contracts and unexpired leases of the Debtor not previously assumed, assumed and assigned or rejected pursuant to section 365 of the Bankruptcy Code and applicable authorizing orders of the Bankruptcy Court.

32.    As set forth in, and in accordance with, Article V of the Plan, subject to the limitations set forth in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the

Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is listed on the schedule of "Assumed Contracts Schedule" in the Initial Plan Supplement or on the schedule of "Amended Assumed Contracts Schedule" in the Amended Plan Supplement; (2) has been previously assumed by the Debtor by Final Order or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (3) is the subject of a motion to assume or reject pending as of the Effective Date; or (4) is otherwise assumed pursuant to the Plan.

33.     The Debtor has exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of its Executory Contracts and Unexpired Leases in accordance with Article V of the Plan and the Plan Supplement.  In accordance with section 1123(d) of the Bankruptcy Code, Article V of the Plan provides for the satisfaction of any Cure associated with any executory contracts or unexpired leases to be assumed pursuant to the Plan in accordance with section 365(b)(l) of the Bankruptcy Code.  All Claims arising from any pre-assumption breach or default of any assumed executory contract or unexpired lease pursuant to the Plan or otherwise will forever be barred from assertion against the Debtor, its estate, the Reorganized Debtor, and their respective property, unless otherwise ordered.

34.     Subject to the provisions set forth in Article V of the Plan and herein, each assumption, assumption and assignment or rejection of an Executory Contract or Unexpired Lease pursuant to the Confirmation Order and in accordance with Article V of the Plan or otherwise shall be legal, valid, and binding upon the Debtor and all non-debtor parties to such Executory Contract or Unexpired Lease, all to the same extent as if such assumption, assumption and assignment, or rejection had been authorized and effectuated pursuant to a separate order of the Bankruptcy Court that was entered pursuant to section 365 of the Bankruptcy Code or prior

to substantial consummation of the Plan.

35.    Pursuant to Article V(c) of the Plan, the deadline for any objections to the proposed assumption or rejection of an Executory Contract or Unexpired Lease, or to the Debtor's calculation of the amount necessary to Cure, is extended to October 14, 2020 at 4:00 (prevailing Eastern Time).   Any objections to the proposed assumption or rejection of an Executory Contract or Unexpired Lease, or to the Debtor's calculation of the amount necessary to Cure must be filed and served on the Debtor or the Reorganized Debtor as applicable on or before October 14, 2020 at 4:00 (prevailing Eastern Time).

> **(xiii) Section 1123(b)(3)—Release, Exculpation, Injunction and Preservation of Claims Provisions.**

36.    **Releases by the Debtor.**  The releases of Claims and Causes of Action by the Debtor described in Article VIII(A) of the Plan pursuant to section 1123(b)(3)(A) of the Bankruptcy Code represent a valid exercise of the Debtor's business judgment.  Pursuing any such Claims or Causes of Action against each Released Party is not in the best interest of the Debtor's Estate as the costs involved likely would outweigh any potential benefit from pursuing such Claims or Causes of Action.

37.    **Releases by Holders of Claims and Interests.**   The releases of Claims and Causes of Action by Holders of Claims and Interests described in Article VIII(B) of the Plan are an integral component of the Plan.  Such releases are provided by Holders of Claims or Interests unless such Holder: (i) is the Holder of an Interest in a Class that is entitled to vote and such Holder (x) votes to accept or reject the Plan and (y) elects on its Ballot to opt out of the releases contained in Article VIII of the Plan; (ii) is the Holder of an Interest in a Class that is entitled to vote and such Holder does not return a ballot accepting or rejecting the Plan; (iii) is the Holder of an Interest in a Class that is entitled to vote and such Class votes to reject the Plan; or (iv) is the

Holder of a Claim that is Unimpaired under the Plan that timely files with the Bankruptcy Court on the docket of the Bankruptcy Case an objection to the releases contained in Article VIII of the Plan that is either (a) uncontested by the Debtor or (b) sustained by the Bankruptcy Court. The releases are therefore consensual.  Each Ballot accurately describes the release provisions of the Plan, sets forth the express release and injunction language from Article VIII of the Plan, directs each Holder of an Interest to the Plan for further information about the release provisions of the Plan, and clearly provides that each Holder of an Interest that returns a signed Ballot has consented to the releases underline such Holder checks the box on the applicable Ballot indicating that such Holder opts not to grant the releases provided in Article VIII(B) of the Plan.

38.     **Injunction.**  The injunction provision set forth in Article VIII(D) of the Plan is necessary to preserve and enforce the releases granted pursuant to Article VIII and is narrowly tailored to achieve that purpose.

39.     **Exculpation.**  The exculpation provisions set forth in Article VIII(C) of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and do not relieve any party of liability for actual fraud or gross negligence.

40.     **Satisfaction of Claims and Termination of Interests.**  Except as otherwise specifically provided in the Plan, the distributions, rights and treatments set forth in the Plan shall be in full and complete satisfaction and release of all Claims and Interests.

41.     Each of the release, indemnification, and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is the best interests of, the Debtor, its Estate, and Holders of

Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties-in-interest in the Chapter 11 Case with respect to the Debtor; and (f) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.  The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the release, exculpation, and injunction provisions contained in Articles VIII(A), VIII(B), VIII(C) and VIII(D) of the Plan, respectively.

42.    **Preservation of Claims and Causes of Action.**  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Article IV(L) of the Plan appropriately provides for the preservation of the Causes of Action, other than any Causes of Action expressly waived, relinquished, exculpated, or released in the Plan or this Confirmation Order.  The provisions regarding Causes of Action in the Plan are appropriate and are in the best interests of the Debtor, its Estate, and Holders of Claims and Interests.

**(xiv)    Section 1129(a)(2)—Compliance by the Debtor and Others With the Applicable Provisions of the Bankruptcy Code.**

43.    The Debtor, as proponent of the Plan, has complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1123, 1125, and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

44.    The Debtor and each of its respective present and former officers, directors, employees, advisors, attorneys, and agents, as applicable, did not solicit the acceptance or rejection of the Plan by any Holders of Interests prior to the approval and transmission of the Disclosure Statement.  Votes to accept or reject the Plan were only solicited by the Debtor and its agents after disclosure to Holders of Claims or Interests of adequate information as defined in section 1125(a) of the Bankruptcy Code.

45.     The Debtor and each of its respective present and former officers, directors, employees, advisors, attorneys, and agents, as applicable, have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article VIII(C) of the Plan.

46.     The Debtor and each of its respective present and former officers, directors, employees, advisors, attorneys, and agents, as applicable, have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distributions of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

                    (xv)     **Section 1129(a)(3)—Proposal of Plan in Good Faith.**

47.     The Debtor has proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself, and the process leading to its formulation.  The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case. The Plan itself, and the process leading to its formulation, provide independent evidence of the Debtor's good faith, serve the public interest, and assure fair treatment of Holders of Claims and

Interests.  Consistent with the overriding purpose of chapter 11, the Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of allowing the Reorganized Debtor to satisfy its obligations under the Plan with sufficient liquidity and capital resources to provide for the distributions and value to be distributed pursuant to the Plan, and the reorganization of the Debtor.

**(xvi)    Section 1129(a)(4)—Bankruptcy Court Approval of Certain Payments as Reasonable.**

48.    The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtor in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy Code.

**(xvii)   Section 1129(a)(5)—Disclosure of Identity of New Members of Board of Directors, Continued Employment of Officers.**

49.    The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code.  Pursuant to Article IV of the Plan, the Debtor has properly disclosed in the Plan or the Plan Supplement, among other things, the (a) identities of the proposed members of the Reorganized Debtor's board and the proposed executive officers of the Reorganized Debtor; and (b) New Executive Employment Agreements; (c) the nature of compensation to the insiders employed or retained by the Reorganized Debtor which is hereby approved.  The appointment of the Reorganized Debtor as the Distribution Agent under the Plan is consistent with the interests of Holders of Claims and Interests and public policy.

**(xviii)  Section 1129(a)(6)—Approval of Rate Changes.**

50.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval; therefore, section 1129(a)(6) of the Bankruptcy Code is satisfied.

**(xix)    Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

51.    The liquidation analysis set forth in the Disclosure Statement, including in section 1.5, as supplemented and confirmed by the Hakala Declaration, including its attachments, and the Doak Declaration, including its attachments (collectively, the "Liquidation Analysis"), and the other evidence related thereto that was proffered or adduced at, or in declarations in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Interest in such Class has voted to accept the Plan or will receive under the Plan on account of such Allowed Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.  Thus, the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

**(xx)    Section  1129(a)(8)—Conclusive  Presumption  of  Acceptance  by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class.**

52.    Section 1129(a)(8) of the Bankruptcy Code requires that each Class of Claims or Interests must either accept the Plan or be Unimpaired under the Plan.  All Classes with Holders of Claims or Interests are Unimpaired or have voted to accept the Plan.  Classes 1, 2, and 3 are Unimpaired and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  As evidenced by the Voting Certification, Classes 4, 5, 6, 7, and 8 are

Impaired and have voted to accept the Plan under section 1126(c) of the Bankruptcy Code, thus, section 1129(a)(8) of the Bankruptcy Code is satisfied.

**(xxi)    Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

53.    The treatment of Allowed Administrative Expense Claims, Allowed Administrative Claims for Professional Fees, and the Allowed DIP Claim under Article II of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

**(xxii)   Section 1129(a)(10)—Acceptance By At Least One Impaired Class.**

54.    As set forth in the Plan, there is no Impaired Class of Holders of Claims, and all Classes of Claims (Classes 1, 2 and 3) are being paid in full and are Unimpaired under the Plan. Therefore, section 1129(a)(10) of the Bankruptcy Code does not apply and the Plan satisfies section 1129(a)(10) of the Bankruptcy Code

**(xxiii)  Section 1129(a)(11)—Feasibility of the Plan.**

55.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence proffered, adduced at, or prior to, or in declarations filed in connection with, the Confirmation Hearing (including, without limitation, the Montes Declaration): (a) is reasonable, persuasive and credible; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor or any successor to the Reorganized Debtor under the Plan; and (d) establishes that the Reorganized Debtor will have sufficient funds available to meet its obligations under the Plan, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

**(xxiv)  Section 1129(a)(12)—Payment of Bankruptcy Fees.**

56.     Article XII(C) of the Plan provides that all fees payable pursuant to section 1930 of the United States Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The Plan therefore satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**(xxv)   Section 1129(a)(13)—Pension Benefits.**

57.     The Debtor does not provide retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code and, therefore, section 1129(a)(13) of the Bankruptcy Code does not apply, and the Plan satisfies section 1129(a)(13) of the Bankruptcy Code.

**(xxvi) Section 1129(a)(14), (15) & (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

58.     The Debtor does not owe any domestic support obligations, is not an individual, and is not a nonprofit corporation.   Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

**(xxvii) Section 1129(c)—Only One Plan.**

59.     Other than the Plan, no other plan has been filed in the Chapter 11 Case. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

**(xxviii) Section 1129(d)—Principal Purpose of the Plan Is Not Avoidance of Taxes.**

60.     No Governmental Unit has requested that the Bankruptcy Court deny Confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

**O.      Satisfaction of Confirmation Requirements.**

61.     Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**P.     Good Faith.**

62.     The Debtor, JPM and the Juniper Parties (and all of their respective officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates, members and representatives) have acted in good faith throughout the Chapter 11 Case, including during the arm's length negotiations of the Restructuring Support Agreement and the Plan.  In addition, they will be deemed to have continued to act in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby; and (b) take the actions authorized by the Confirmation Order.

**Q.     Transfers by Debtor; Vesting of Assets.**

63.     All of the property of the Debtor's Estate shall vest in the Reorganized Debtor or its successors or assigns, as the case may be, free and clear of all Liens, charges, Claims, encumbrances and other interests, except as expressly provided in the Plan.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

**R.     Likelihood of Satisfaction of Conditions Precedent to Consummation.**

64.     Each of the conditions precedent to Confirmation of the Plan, as set forth in Article IX(A) of the Plan, and each of the conditions precedent to the occurrence of the Effective Date of the Plan, as set forth in Article IX(A) of the Plan, has been satisfied or waived in accordance with the provisions of the Plan or is reasonably likely to be satisfied or waived.

**S.     Implementation.**

65.     All documents, agreements, and transactions, necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary

documents and transactions have been negotiated in good faith, at arm's length, and are in the best interests of the Debtor and the Reorganized Debtor and shall, upon satisfaction of all applicable conditions and execution, be valid, binding and enforceable and not in conflict with applicable law.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

### A.    Order.

66.    Pursuant to section 1129(a) of the Bankruptcy Code, the Plan (a copy of which is attached hereto as **Exhibit A**) is confirmed.

### B.    Objections.

67.    To the extent that any objections, reservations of rights, requests, statements, or joinders to Confirmation, which have not been withdrawn, waived or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

### C.    Findings of Fact and Conclusions of Law.

68.    The findings of fact and conclusions of law stated in the Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Case by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

### D.    Confirmation of the Plan.

69.    This Confirmation Order confirms the Plan and each of its provisions as they may be amended, modified or clarified by the Confirmation Order in each and every respect pursuant

to section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof by the Debtor or Reorganized Debtor, are authorized and approved as finalized, executed, and delivered.  Without further order or authorization of the Bankruptcy Court, the Debtor, Reorganized Debtor, and Distribution Agent, as the case may be, are authorized and empowered to make all non-material modifications to all documents included as part of the Plan Supplement that are consistent with the Plan prior to the occurrence of the Effective Date.  As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

70.     The terms of the Plan, the Plan Supplement, and exhibits thereto are incorporated by reference into, and are an integral part of, this Confirmation Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Plan.

**E.**     **Plan Classification Controlling.**

71.     The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications and Interest amounts set forth on the Ballots tendered to or returned by the Holders of Interests in connection with voting on the Plan:  (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not represent, and in no event shall be deemed to modify or otherwise

affect, the actual classification or amount of such Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of an Interest as representing the actual classification or amount of such Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtor, Reorganized Debtor, or the Distribution Agent, except for voting purposes.

**F.      The Release, Injunction, Exculpation and Related Provisions Under the Plan.**

72.      The following release, injunction, exculpation and related provisions of Article VII of the Plan, as excerpted from the Plan, are hereby approved and authorized in their entirety.

73.      Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Plan Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Plan Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor prior to the Plan Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Plan Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a

Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Plan Effective Date.

G.      **Releases By The Debtor.**

74.      Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Plan Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, and the Releasing Parties from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, that the Debtor or the Reorganized Debtor would have been legally entitled to assert in their own right or on behalf of the Holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the DIP Facility, the DIP Documents, the Exit Facility, the Exit Facility Documents, or any Restructuring, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan, the filing of the Bankruptcy Case, the pursuit of the DIP Facility, the pursuit of the Exit Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the New Common Stock pursuant to the Plan, or the distribution of property under the Plan or any other related

agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Plan Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**H.    Releases by Holders of Claims.**

75.    As of the Plan Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtor under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Plan Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor, the Reorganized Debtor, and each Released Party from any and all  Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including but not limited to any derivative claims, asserted or assertable on behalf of the Debtor, its Estate, or the Reorganized Debtor,  that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Case, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the DIP Facility, the DIP Documents, the Disclosure  Statement, the Plan, the Exit Facility, the Exit Facility Documents, contract, instrument, release, or other Plan Transaction Document,

agreement, or document created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, or the Plan, the filing of the Bankruptcy Case, the pursuit of the DIP Facility, the pursuit of the Exit Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the New Common Stock pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Effective Date provided, however, that the foregoing releases shall have no effect on the liability of any Person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any Person or Entity under the Plan or any document, instrument or agreement executed to implement the Plan.

76. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1129 of the Bankruptcy Code, of the releases described in Article VIII which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article VIII is: (1) consensual; (2) in exchange for the good and valuable consideration provided by the Released Parties, (3) a good-faith settlement and compromise of such Claims and Interests; (4) in the best interests of the Debtor and all Holders of Claims and Interests; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) subject to the provisions of Article VIII, a bar to any of the Releasing Parties or the Debtor or its Estate asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

**I.    <u>Exculpation</u>.**

77.    Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission occurring on or after the Petition Date and before the Effective Date in connection with, relating to, or arising out of, the Bankruptcy Case, the formulation, preparation, dissemination,   negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the DIP Facility, the DIP Documents, the   Exit Facility, the Exit Facility Documents, or any Restructuring, contract,  instrument, release or other Plan Transaction Document, agreement, or document created  or entered into in connection with the Disclosure Statement or the Plan, the filing of the  Bankruptcy Case, the pursuit of the DIP Facility, the pursuit of the Exit Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of the New Common Stock pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration  pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**J.**      **Injunction.**

78.      Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Plan Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Plan Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

**K.**      **Post-Confirmation Notices and Bar Dates.**

**1.**      **Notice of Entry of the Confirmation Order and Occurrence of the Effective Date.**

79.     In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) business days of the Effective Date, the Debtor shall serve a combined Notice of Confirmation and Effective Date (the "Combined Notice") by United States mail, first class postage prepaid to all parties having been served with the Confirmation Hearing Notice; *provided*, *however*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtor mailed a notice of Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address.  Mailing of the Combined Notice shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order and the occurrence of the Effective Date, to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provisions of applicable non-bankruptcy law.

**2.     Professional Compensation.**

80.     As set forth in Article II(B) of the Plan, Holders of Administrative Claims for Professional Fees shall file and serve final requests for allowance and payment of their Professional Claim no later than thirty (30) days after the Effective Date.  Objections to any Professional Claim must be filed and served on the Reorganized Debtor and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Claim.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior Bankruptcy Court orders, the Allowed Amounts of such Administrative Claims for Professional Fees shall be determined by the Bankruptcy Court.

81.     Except as otherwise specifically provided in the Plan, from and after the Effective Date, any requirement that a Professional comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**L.      Retention of Jurisdiction.**

82.     Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan as set forth in Article XI of the Plan.

**M.      Cancellation of Notes, Instruments, Certificates, and Other Documents.**

83.     On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, Certificates, and other documents evidencing Claims or Interests shall be cancelled and the obligations of the Debtor or Reorganized Debtor thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for the purposes of (1) allowing Holders to receive distributions under the Plan, and (2) allowing and preserving the rights of the Reorganized Debtor or the Distribution Agent, as applicable, to make distributions on account of Claims or Interests.

**N.      Administrative Claims.**

84.     On the Effective Date or as soon thereafter as such Allowed Administrative Expense Claim becomes due and payable according to its terms, Allowed Administrative

Expense Claims shall be paid in full in Cash or appropriately reserved for, except to the extent that any Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Expense Claim.

### O.    Exemption from Securities Law.

85.     Pursuant to section 1125(e) of the Bankruptcy Code, (i) the Debtor's transmittal of the Plan solicitation materials as set forth herein, (ii) the Debtor's solicitation of votes on the Plan, and (iii) the participation of its respective present and former members, partners, representatives, officers, directors, employees, advisors, attorneys, and agents or any other persons in (i) or (ii) above, are not and will not be governed by or subject to any otherwise applicable law, rule, or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale or purchase of securities.

### P.    Binding Effect.

86.     Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, exculpation, and injunctions described in the Plan or herein, and any and all non-debtor parties to executory contracts and unexpired leases with the Debtor as set forth in the Plan.

87.     The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor

or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**Q.      References to Plan Provisions.**

88.      The failure to specifically include or to refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, and such article, section or provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

**R.      Governing Law.**

89.      Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**S.      Effectiveness of All Actions.**

90.      Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the

officers or directors of the Debtor, Reorganized Debtor, or Distribution Agent, and with the effect that such actions had been taken by unanimous action of each.

**T.**    **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

91.    Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, the Debtor and the Reorganized Debtor hereby are authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, any other Plan documents, and all documents, instruments, and agreements related thereto and all annexes, exhibits, and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any member or board of directors' approval.  Further, each of the Debtor, the Reorganized Debtor, and the Distribution Agent hereby is authorized and empowered to take such actions, to perform all such acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan that may be required or necessary for its performance thereunder without the need for any member or board or directors' approval.

92.    On the Effective Date, the Reorganized Debtor or Distribution Agent, as applicable, is authorized and empowered to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan, and any document related thereto, in the name of and on behalf of the Reorganized Debtor.  Subject to the terms of the Confirmation Order, the Debtor, the Reorganized Debtor and the Distribution Agent are

authorized to take any such actions without further corporate action of the Debtor or the Reorganized Debtor.

93.     This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to: (a) the implementation or Consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto and (b) any other acts and transactions referred to in or contemplated by the Plan, Plan Supplement, Disclosure Statement and any documents, instruments or agreements related thereto and any modifications or amendments thereto.

## U.    Changes to Plan and Plan Supplement.

94.     Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to revoke or withdraw, alter, amend, or modify materially the Plan and the Plan Supplement, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such amendment, modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X of the Plan.  Entry of the Confirmation Order constitutes approval of all modifications or amendments to the Plan that occurred after the solicitation of the Plan pursuant to section 1127(a) of the Bankruptcy Code and additional disclosure or resolicitation under Bankruptcy Rule 3019 pertaining to the modifications or amendments is not required.

## V.    Texas Comptroller of Public Accounts.

95.    Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Texas Comptroller of Public Accounts ("Texas Comptroller") for a tax debt, including interest and penalties on such tax.  This provision is not an admission by any party that such liability exists.

96.    Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist.

97.    A failure by the Reorganized Debtor to make a payment to the Texas Comptroller on account of an Allowed Claim of the Texas Comptroller pursuant to the terms of the Plan shall be an event of default ("Event of Default").  If the Reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) business days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court.  Notice of the default shall be served by first class mail upon the Reorganized Debtor at:  7001 N. Scottsdale Road, Suite 2050, Phoenix, AZ  85253, Attn:  Chief Executive Officer, and upon Debtor's attorney at:  Snell & Wilmer, LLP, 400 E. Van Buren, Suite 1900, Phoenix, AZ  85004-2202, Attn:  Christopher Bayley, Esq.; cbayley@swlaw.com.  The Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Texas  Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

## W.    Effect of Conflict Between Plan and Confirmation Order.

98.     If there is any direct conflict between the terms of the Plan, including the Plan Supplement, and the Confirmation Order, the terms of the Confirmation Order shall control.

**X.      Authorization to Consummate.**

99.     The Debtor is authorized to consummate the Plan at any time after entry of the Confirmation Order subject to satisfaction or waiver of the conditions precedent to Consummation set forth in Article IX of the Plan.

**Y.      Final Confirmation Order and Waiver of Stay.**

100.    This Confirmation Order is a final order.  For good cause shown, the stay of Confirmation set forth in Bankruptcy Rule 3020(e) is hereby waived

**Z.      Substantial Consummation.**

101.    Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**AA.    Effect of Reversal.**

102.    If any or all provisions of this Order are reversed, modified, or vacated by subsequent order, such act shall not affect the validity of acts or obligations taken or incurred under the Plan, Plan Documents, or this Order prior to the Debtors or Reorganized Debtors receipt of notice of such reversal, modification, or vacate.  Notwithstanding any such reversal, modification, or vacate of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacate shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

**BB.**    **The Record.**

103.    The record of the Confirmation Hearing is closed.

**Dated: October 13th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**